UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD E. ENO, | No. CIV-S-10-1691 KJM JFM |
| Plaintiff, | |
| v. | ORDER |
| KENNETH L. SALAZAR, Secretary, U.S. Department of the Interior; et al., | |
| Defendants. | |

This matter comes before the court on 1) plaintiff's motion for summary judgment (ECF 23) and 2) the cross-motion for summary judgment by defendants Kenneth L. Salazar, the United States Department of the Interior, the Interior Board of Land Appeals ("IBLA"), and the United States Forest Service ("Forest Service") (together, "defendants") (ECF 25).  The court has decided these motions without a hearing.  For the following reasons, the court hereby DENIES plaintiff's motion and GRANTS defendants' motion.

I.      FACTS AND PROCEDURAL HISTORY

Plaintiff bought an interest in a forty-acre area of land called "the Hound Dog claim" on July 28, 1998.  (Pl.'s Statement of Undisputed Facts at ¶¶ 8, 12, ECF 23-1 (hereinafter, "ECF 23-1"); Defs.' Mem. of Points and Authorities (hereinafter "Defs' Mot.") at 6-7, ECF 25.)  Defendant Forest Service had applied on August 5, 1997 with the Bureau of Land Management ("BLM") to withdraw the area making up the Hound Dog claim from mineral entry and location.

*Eno v. United States*, 179 IBLA 227, 230 (2010).  On or about July 12, 1999, the Forest Supervisor signed a "Decision Notice and Finding of No Significant Impact," finding that no significant impact would result from this withdrawal, and on August 31, 1999, the BLM issued Public Land Order 7406 withdrawing the area from mineral entry and location for fifty years. (ECF 23-1 at ¶ 18; Defs.' Mot. at 6.)  On January 4, 2001, the Plumas National Forest Supervisor issued Forest Order 01-01 closing the travertine quarry on the Hound Dog claim to the public. (ECF 23-1 at ¶ 19.)

A Mining Claims Rights Restoration Act ("MCRRA") hearing took place in June 2002 at the request of the Forest Service.  (ECF 23-1 at ¶ 24; Defs.' Mot. at 7.)  The administrative law judge ("ALJ") issued a general permission to engage in placer mining on December 4, 2003.  (AR[1] at 01393.)  On or about January 2, 2004, defendant Forest Service appealed this decision to the IBLA.  (ECF 23-1 at ¶ 26.)  The IBLA affirmed the ALJ's decision on February 13, 2007.  (AR at 00611.)

Plaintiff filed an Application for an Award of Attorneys' Fees and Expenses on March 14, 2007 (AR at 00466), which was denied on September 21, 2009 (AR at 00260). Plaintiff appealed the denial to the IBLA on October 16, 2009.  (AR at 00258.)  The IBLA found that plaintiff was not eligible for an award of attorneys' fees and expenses.  *Eno*, 179 IBLA at 236.  Specifically, the IBLA determined that the MCRRA public hearing is not an adversary adjudication as required for the Equal Access to Justice Act (EAJA) to apply and that, even if it were an adversary adjudication, the granting of general permission to engage in placer mining constituted the granting of a license within the meaning of the EAJA.  *Id*. at 241.

Plaintiff filed his complaint before this court seeking judicial review of the IBLA's June 4, 2010 decision finding he was not entitled to an award of attorneys' fees and expenses under the EAJA, 5 U.S.C. § 504, on July 1, 2010.  (ECF 1.)  Defendants filed an answer to the complaint on September 7, 2010.  (ECF 16.)

/////

---

[1]  AR stands for "Administrative Record," filed October 29, 2010.

Plaintiff filed the present motion for summary judgment on December 3, 2010. (ECF 23.)  Defendants filed the present cross-motion for summary judgment and opposition to plaintiff's motion on January 7, 2011.  (ECF 25.)  Plaintiff filed his reply and opposition on February 4, 2011.  (ECF 28.)  Defendants filed their reply on March 4, 2011.  (ECF 29.)

II.     ANALYSIS

    A.  Standard

The denial of attorneys' fees under the EAJA is reviewed *de novo*. *Am. Pac. Concrete Pipe Co. v. Nat'l Labor Relations Bd.,* 788 F.2d 586, 590 (9th Cir. 1986) ("Ordinarily, the standard to be applied to a denial of attorneys' fees under the EAJA is the abuse of discretion standard. [ . . . ] However, in this case, the NLRB is not interpreting a statute within its area of special expertise; thus, its interpretation of the EAJA is not entitled to the deference we normally employ."); *Karuk Tribe of Cal. v. United States Forest Serv*., 681 F.3d 1006, 1017 (9th Cir. 2012) ("Although we defer to an agency's interpretation of its own regulations and the statutes it is charged with administering, an agency's interpretation of a statute outside its administration is reviewed *de novo*." (internal citations omitted)).

Plaintiff's request that the court give the EAJA a broad construction because "the Supreme Court relaxed the narrow/strict construction canon of EAJA cases" and the EAJA is a remedial statute, is unavailing.  (Pl.'s Reply at 1.)  "Although the provision may be characterized as remedial, such characterization does not automatically support liberal construction in favor of appellant." *Kaycee Bentonite Corp.*, 79 IBLA 182, 185 (1984).  Moreover, the case relied upon by plaintiff in contending the Supreme Court has relaxed the narrow construction of the EAJA does not have the far-reaching meaning plaintiff suggests.  In *Richlin Security Service Co. v. Chertoff*, the Court was not confronted with a question of waiver of immunity; rather, the question before it was whether paralegal fees could be recovered by a prevailing party at prevailing market rates under the EAJA.  553 U.S. 571 (2008).  The Court found the statute was unambiguous in this regard.  *Id.* at 590.  More to the point is a recent Ninth Circuit case, in which the court explicitly held the EAJA is to be interpreted narrowly.  *Western Watersheds Project v. Interior Bd. of Land Appeals*, 624 F.3d 983, 989 (9th Cir. 2010).

      B. Application

The EAJA provides: "An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding . . . ." 5 U.S.C. § 504(a)(1). "Adversary adjudication" is defined in relevant part as: "an adjudication under section 554 of this title [5 U.S.C. § 554] in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication . . . for the purpose of granting or renewing a license . . . ." 5 U.S.C. § 504(b)(1)(C)(i). "'[L]icense' includes the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8).

Plaintiff contends that granting permission to engage in placer mining is not the granting or renewing of a license. (Pl.'s Mot. at 24.) Specifically, plaintiff contends "the Mining Law grants a statutorily and constitutionally protected right to mine . . . not . . . a license," the government's reference to licensees elsewhere in relation to the MCRRA supports the position that this permission is not a license, and the MCRRA does not provide "a mining claimant must apply for the right to mine." (*Id.* at 24-28.) Defendants maintain that granting permission to engage in placer mining under the MCRRA constitutes granting a license under the EAJA and therefore is excluded from the definition of "adversary adjudication." (Defs.' Mot. at 17.) Specifically, defendants contend it is "explicitly a form of permission under MCRRA" and plaintiff "did not have a right to conduct placer mining" once the public hearing provided for in the MCRRA was called. (*Id.* at 17-18.) Plaintiff counters that "the order granting a general permission to engage in placer mining merely acknowledges the right to mine that already existed." (Pl.'s Reply at 17.) Plaintiff contends that while a license must "be applied for and may be withdrawn, suspended, revoked, or annulled," MCCRA confers a right to mine and nothing in it "suggests that an order granting a general permission to engage in placer mining may be withdrawn, suspended, revoked, or annulled." (*Id.*) Plaintiff further contends he "did not apply to do anything. Instead, his right to mine was granted him by Congress and that right could be limited only if, after a hearing, the Secretary made an appropriate finding." (*Id*. at 18.)

4

1        Plaintiff's arguments are unavailing. The governing law detailed above is
2   unambiguous: any form of permission is a license. *See Western Watersheds Project*, 624 F.3d at
3   987 ("The first step in interpreting a statute is to determine whether the language at issue has a
4   plain and unambiguous meaning with regard to the particular dispute in the case, and the inquiry
5   must cease if the statutory language is unambiguous and the statutory scheme is coherent and
6   consistent." (quotation marks and citation omitted)). The court nonetheless addresses plaintiff's
7   individual arguments.

8        Plaintiff's contention that "the order granting a general permission to engage in
9   placer mining merely acknowledged the right to mine that already existed" is baseless. (Pl.'s
10  Mot. at 24.) The MCRRA specifies that the locator of a placer claim does not have an automatic
11  right to conduct placer mining; rather, the locator "shall conduct no mining operations for a
12  period of sixty days after the filing of a notice of location" during which time the Secretary of the
13  Interior can choose "to hold a public hearing to determine whether placer mining operations
14  would substantially interfere with other uses of the land." 30 U.S.C. § 621(b). If the Secretary
15  decides to hold such a hearing, "mining operations on that claim shall be further suspended until
16  the Secretary has held the hearing and has issued an appropriate order. The order . . . shall provide
17  for one of the following: (1) a complete prohibition of placer mining; (2) a permission to engage
18  in placer mining [conditionally]; or (3) a general permission to engage in placer mining." *Id.*
19  Plaintiff accordingly did not have the automatic right to mine --- his "right to mine" was subject
20  to the Secretary's action or inaction.

21       Plaintiff relies on a Northern District of California case for his proposition that the
22  Mining Law does not grant a license and to support his "right to mine" argument. (Pl.'s Mot. at
23  24.) Plaintiff specifically cites to dicta in the order in which the court found the Mining Law
24  "confers a statutory right upon miners to enter certain public lands for the purpose of mining and
25  prospecting [and] differentiates mining operations from licenses . . . which are permissive in
26  nature." *Karuk Tribe of Cal. v. United States Forest Serv.*, 379 F. Supp. 2d 1071, 1101 (N.D.
27  Cal. 2005). This dicta focuses on the Mining Law, not the MCRRA. Moreover, the Ninth Circuit
28  has reversed and remanded this district court's order since plaintiff's motion was filed. The Ninth

1    Circuit specifically discussed the Mining Law's grant of the right to mine as subject to the federal
2    government's regulatory power and discretionary authorization of certain mining activities.
3    *Karuk Tribe of Cal,* 681 F.3d at 1023.  Plaintiff's "right to mine" does not exist in a vacuum.  As
4    stated above, on land governed by the MCRRA, it is subject to the Secretary's action or inaction.

5          Moreover, plaintiff's citation to the MCRRA and the Secretary's withdrawal of the
6    lands within plaintiff's claim that refer to "licensees," and "license" is misguided.  (Pl.'s Mot. at
7    25.)  There can be more than one type of "licensee," and advising mining claimants that licensees
8    are not liable for damage to a mining claim does not preclude the "individual party or parties"
9    from also being licensees.  *See* 30 U.S.C. § 622.  Similarly, the Secretary's action simply provides
10   that land laws governing use of land under license are still applicable after the withdrawal.
11   64 Fed. Reg. 47515 (Aug. 12, 1999).  The license to the land is not at issue here; the license to the
12   mining claim is.

13         Furthermore, it is irrelevant that a mining claimant does not have to apply for the
14   right to mine under the MCRRA, as is the question of whether an order granting a general
15   permission under the MCRRA may be withdrawn, suspended, revoked, or annulled.  (Pl.'s Mot.
16   at 26.)  The question is not whether plaintiff had to apply for a license, but whether a license had
17   to be "granted"; this question must be answered in the affirmative.  5 U.S.C. § 504(b)(1)(C);
18   *Western Watersheds Project*, 624 F.3d at 988 ("The language chosen by Congress to describe the
19   'purpose' of an adjudication refers to the nature of the agency action rather than the individual
20   party's reasons for bringing the appeal.").  Accordingly, plaintiff's citation to 5 U.S.C. § 558(c),
21   governing application for licenses and referring to procedures whereby termination of a license is
22   lawful, is misplaced.  *See Western Watersheds Project*, 624 F.3d at 988 (There is a "well-
23   recognized distinction under the APA between applications for a license and adjudications in
24   which an agency seeks the withdrawal, suspension, revocation, or annulment of a license."
25   (internal quotation marks and citation omitted)).

26         Accordingly, the court finds that granting permission to engage in placer mining
27   constitutes granting a license for purposes of the EAJA and the EAJA is inapplicable here.  The
28   court declines to reach the balance of the parties' arguments.

III.  CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED and defendants' motion for summary judgment is GRANTED. The IBLA's June 4, 2010 decision is AFFIRMED.

IT IS SO ORDERED.

DATED: December 18, 2012.

_____
UNITED STATES DISTRICT JUDGE